**UNITED STATES of America, Plaintiff,**

v.

**N.V. NEDERLANDSCHE COMBINATIE VOOR CHEMISCHE INDUSTRIE et al., Defendants.**

**No. 68 Cr. 870 (DNE).**

United States District Court,
S. D. New York.

Feb. 28, 1977.

Donald A. Kaplan, Dept. of Justice, Washington, D. C., for plaintiff.

Rogers, Hoge & Hills, New York City, for defendant John A. Massaut (Covington & Burling, Washinton, D. C., of counsel).

Turk, Marsh, Kelly & Hoare, New York City, for defendant Harry Y. de Schepper.

Covington & Burling, Washington, D. C., for defendants N.V. Amsterdamsche Chininefabriek, N.V. Nederlandsche Kininefabriek, Bandoengsche Kininefabriek Holland N.V., ACF Farmaceutische Groothandel

N.V. and N.V. Bureau Voor Der Kinineverkoop "Buramic."

## MEMORANDUM

EDELSTEIN, Chief Judge:

This is a motion by the government to dismiss the indictment, pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, as against the following defendants: N.V. Amsterdamsche Chininefabriek, N.V. Nederlandsche Kininefabriek, Bandoengsche Kininefabriek Holland N.V., ACF Farmaceutische Groothandel N.V., N.V. Bureau Voor der Kinineverkoop "Buramic," Carel N. van der Spek, John A. Massaut, George Cruickshank, Walter W. Buchler, John A. Lumley, Pierre Augustins and Harry Y. de Schepper.[1]

The affidavit of Joel Davidow and Memorandum of Law submitted by the government in support of its motion relate primarily to the dismissal of the indictment against John A. Massaut. The court will therefore first focus upon the motion as it relates to that defendant.

 Rule 48(a) vests this court with discretion in determining if the instant motion should be granted. *E. g., United States v. Bettinger,* 54 F.R.D. 40 (D.Mass. 1971); *United States v. Greater Blouse, Skirt and Neckwear Contractors Ass'n,* 228 F.Supp. 483 (S.D.N.Y.1964). Any suggestion that the district court simply "rubber stamp" a Rule 48(a) motion ignores the Supreme Court's inclusion in the Rule of the requirement that indictments be dismissed "by leave of court."[2]

 A court, in the exercise of its discretion, certainly must protect the defendant from harassing motions. *See United States v. Greater Blouse, Skirt and Neckwear Contractors Ass'n,* 228 F.Supp. 483, 487 (S.D.N.Y.1964). In adddition to protecting the rights of the defendant, the court is vested with the responsibility of protecting the interests of the public on whose behalf the criminal action is brought. This is especially true where, as here, the matter comes before the court on indictment rather than information. *See, e. g., United States v. Bettinger,* 54 F.R.D. 40 (D.Mass.1971); *United States v. Doe,* 101 F.Supp. 609 (D.Conn.1951).

 The indictment in this case alleges a criminal conspiracy to fix prices, control bidding and buying, and allocate customers and markets in the sale of quinine, quinidine, and other products derived from cinchona bark. The defendants include major sellers of these products and individuals who allegedly played a significant role in the criminal conspiracy. The offenses included in the indictment have been characterized by government counsel as being of the most grave and serious nature.[3] In light of the gravity of these charges, the court is constrained to examine with great care whether the government's present de-

---

1. The motion to dismiss does not include defendants Georg Tessmar, Buchler & Company and Lake & Cruickshank Limited. The government states that Georg Tessmar has died and that a separate motion to dismiss will be forthcoming as to him. No explanation is offered regarding Buchler & Company or Lake & Cruickshank Limited.

2. The Second Preliminary Draft of Federal Rules of Criminal Procedure (1944) 178 [Rule 50] recommended that the prosecutor be given absolute power to dismiss a case subject only to a requirement that a statement of reasons for the dismissal also be filed. The Supreme Court changed the Rule to the form in which it was adopted by Congress and in which it currently remains.

3. At the hearing in this case on March 11, 1970, Mr. Sklarsky of the Department of Justice argued for maximum penalties to be imposed upon a corporate defendant which entered pleas of nolo contendere to two counts of the indictment. Mr. Sklarsky, in support of the government's position, stated:

 First, I would like to say that this was a thorough-going conspiracy which affected a vital and important and necessary drug, quinine and quinidine. Tr. p. 24.
 I say in view of all the circumstances in this case, in view of the nature of the product and the crime, the wilfulness of the crime, the knowledge they were violating the law, the effect of the crime, .the profits they incurred, all these put together well deserve or should deserve a maximum fine on each of the two counts. Tr. p. 27.

sire to dismiss these indictments is in the public interest.

■ The government does not contend that insufficient evidence exists to sustain convictions on the charges pending against Mr. Massaut. What is contended is that prosecution of this indictment would be at great public expense without any certainty of success due to the difficulty in gathering witnesses and the possible frailty of witness' memory. The outcome of litigation, to be sure, cannot be predicted with complete accuracy. To that extent, uncertainty is inherent in every litigation. As such, the government assertions are not persuasive and hardly indicate the exercise of judicial discretion in favor of the government's motion.

■ The government's motion also relies in large part on a private agreement with N.V. Nederlandsche Combinatie Voor Chemische Industrie (Nedchem) whereby Nedchem would plead guilty to three counts of the indictment and the government would move to dismiss the indictment as to Nedchem's employee, Mr. Massaut. The court has already made it clear to all involved that it would not be privy to any agreement by which some defendants entered guilty pleas in return for dismissals as to others.[4] The government now seeks to justify its motion to dismiss by presenting the court with the *fait accompli* of Nedchem guilty pleas. This court will not be a party indirectly to that which it previously rejected directly.

The court is not affected in the exercise of its discretion by the previous pleas of Nedchem. After reviewing the entire record,[5] the court has determined that a dismissal of the indictment against Mr. Massaut is not in the public interest. Therefore, the government's motion to dismiss as to Mr. Massaut must be and is denied.

■ The government's stated reason for dismissing as to the other individual defendants is "[s]ince most of the remaining individuals played minor roles, it would be unfair to proceed against them while Massaut was being dismissed."[6] Denial of the motion as to these defendants follows from the denial of the motion as to Massaut. As to the remaining foreign corporations, the government merely states, "[T]he possibility of their coming to the United States in some future year is neither sufficiently great nor important to justify the expense and inconvenience of continued commitment of resources to this case, including further immigration surveillance, possibly for many more years."[7] For the reasons above stated the motion as to these defendants must also be denied.

So ordered.

---

4. Hearing of March 25, 1975 at which Nedchem entered the guilty pleas:

 MR. GRIBBON: Your Honor, I feel at this juncture I have no difficulty in representing both of them [Nedchem and Massaut]. Should a trial take place in which both the corporation and the individual were presenting defenses, I would want to have an opportunity to reexamine that matter myself and to put the question afresh to both the corporation and the individual.

 THE COURT: But I am afraid that may be too late. I think that potential danger of the inherent risk of conflict must be examined because, as I suggested and tried to point out to you, if you are proceeding on the assumption and have given advice to these defendants both separately and jointly that this Court will dismiss the remaining counts, you are treading upon very tenuous ground. This is not to say that the Court will not yield to a motion by the Government, but I just think it

 is entirely too dangerous for you to proceed on the assumption that there will not be a trial. Tr. pp. 7–8.

 \* \* \* \* \* \*

 THE COURT: Do you understand that I am *not bound by any representation or promise* made to you by the Government concerning whether or not I will grant a motion to dismiss the indictment as to any other defendant, including Mr. Massaut?

 Do you understand that? Tr. p. 18.

5. The court notes other "arguments" contained in the Davidow affidavit. The court finds them unpersuasive.

6. Memorandum of Law submitted by the United States in support of its Motion for Leave to Dismiss, pp. 5–6.

7. Affidavit of Joel Davidow, p. 7.